UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHEN BUSHANSKY,

          Plaintiff,

      v.

BUSINESS FIRST BANCSHARES, INC.,
ROBERT GREER, JR., LLOYD ALFORD,
JOHN GRAVES, DAVID L. LAXTON, III,
ROLFE MCCOLLISTER, JR., ANDREW
MCLINDON, DAVID MELVILLE, III,
PATRICK MOCKLER, DAVID
MONTGOMERY, ARTHUR PRICE, FAYEZ
K. SHAMIEH, KENNETH SMITH, ROBERT
YARBOROUGH, THOMAS EVERETT
STEWART, STEVE WHITE, JACK E.
BYRD, JR., and N. JEROME VASCOCU,

          Defendants.

---

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.    This is an action brought by Plaintiff against Business First Bancshares, Inc. ("Business First" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on the proposed merger of Business First and Pedestal Bancshares, Inc. ("Pedestal") (the "Proposed Transaction").

2.    On January 22, 2020, Business First and Pedestal issued a joint press release

announcing that they had entered into an Agreement and Plan of Reorganization dated January 22, 2020 (the "Merger Agreement").  Under the terms of the Merger Agreement, Pedestal stockholders will receive cash consideration of approximately $21.8 million, which will be in the form of a pre-closing, tax-free distribution to Pedestal's shareholders, and approximately 1.745 shares of Business First's common stock for each Pedestal share they own ("Merger Consideration").  Upon completion of the Proposed Transaction, Business First stockholders will own approximately 64% and former Pedestal stockholders will own approximately 36% of the combined company.

3.      On March 4, 2020, Business First filed a Joint Proxy Statement/Prospectus on Form 424B3 (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Business First stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the pro forma forecasts and estimates relied upon by Business First's financial advisor, Raymond James & Associates, Inc. ("Raymond James"), in its valuation analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Raymond James; and (iii) Raymond James' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Business First's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections

14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Business First's common stock trades on the NASDAQ Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, a continuous stockholder of Business First.

9.      Defendant Business First is a Louisiana corporation, with its principal executive offices located at 500 Laurel Avenue, Suite 100, Baton Rouge, Louisiana 78701.  The Company, through its banking subsidiary b1BANK, operates 26 banking centers, in markets across Louisiana and Texas.  b1BANK provides commercial and personal banking, treasury management, and wealth solutions services to small to midsize businesses and their owners and employees.  Business First's common stock trades on the NASDAQ Global Select Market under the ticker symbol "BFST."

10.      Defendant Robert Greer, Jr. ("Greer") serves as a director of the Company.

11.      Defendant Lloyd Alford ("Alford") serves as a director of the Company.

12.      Defendant John Graves ("Graves") serves as a director of the Company.

13.     Defendant David L. Laxton, III ("Laxton") serves as a director of the Company.

14.     Defendant Rolfe McCollister, Jr. ("McCollister") serves as a director of the Company.

15.     Defendant Andrew McLindon ("McLindon") serves as a director of the Company.

16.     Defendant David Melville, III ("Melville") serves as the Company's President, Chief Executive Officer ("CEO") and a director.

17.     Defendant Patrick Mockler ("Mockler") serves as a director of the Company.

18.     Defendant David Montgomery ("Montgomery") serves as a director of the Company.

19.     Defendant Arthur Price ("Price") serves as a director of the Company.

20.     Defendant Fayez K. Shamieh ("Shamieh") serves as a director of the Company.

21.     Defendant Kenneth Smith ("Smith") serves as a director of the Company.

22.     Defendant Robert Yarborough ("Yarborough") serves as a director of the Company.

23.     Defendant Thomas Everett Stewart ("Stewart") serves as a director of the Company.

24.     Defendant Steve White ("White") serves as a director of the Company.

25.     Defendant Jack E. Byrd, Jr. ("Byrd") serves as a director of the Company.

26.     Defendant N. Jerome Vascocu ("Vascocu") serves as a director of the Company.

27.     Defendants referenced in paragraphs 10 to 26 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

28.     Pedestal is a financial holding company headquartered in Houma, Louisiana, and

the parent company of Pedestal Bank, a Louisiana state banking association that offers a full range of banking products and services from 22 full-service branch locations located across southern Louisiana.  As of September 30, 2019, Pedestal reported $1.2 billion in total assets, $0.8 billion in total loans, $1.0 billion in total deposits and $148.7 million in shareholders' equity.  Pedestal's principal office is located at 1300 West Tunnel Boulevard, Houma, Louisiana 70360.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

29.    Business First is a bank holding company and the parent company of b1BANK, formerly known as Business First Bank.  b1BANK is a Louisiana state banking association and community-based financial institution that offers a full array of banking products and services. The Company currently operates throughout Louisiana and Dallas, Texas, from a network of 26 full-service banking centers.  Business First is one of the ten largest Louisiana-based financial institutions.  As of December 31, 2019, the Company had total assets of $2.3 billion, total loans of $1.7 billion, total deposits of $1.8 billion and shareholders' equity of $285.1 million.

30.    The Company's business strategy includes expanding its presence in existing markets, opportunistic market expansion along the I-10/12 and I-20 corridors into the Dallas/Fort Worth, Houston, and East Texas markets, and the Jackson and Gulfport/Biloxi, Mississippi markets, and a focus on acquisitions.  For example, Business First recently acquired Minden Bancorp, Inc. in January 2018 and Richland State Bancorp, Inc. in December 2018.

31.    On January 22, 2020, the Company announced its financial results for the fourth quarter and full fiscal year 2019.  For the year, Business First reported net income of $23.8 million, or $1.74 per diluted share, representing increases of $9.7 million and $0.52, respectively, from fiscal year 2018.  The Company's core net income for the year was $24.6 million, or $1.80 per

diluted share, reflecting increases of $7.8 million and $0.35, respectively, from fiscal year 2018.

Commenting on the financial results, defendant Melville stated:

> 2019 was a year of successful transition for our company. . . . We rebranded, we opened new locations in growth markets, we solidified relationships from our two most recent acquisitions and we increased core earnings per share year-over-year by almost 25%, while growing organically at a healthy, well capitalized rate and maintaining sound asset quality. I really couldn't have asked for more from our team over the past year and we take the field just as excited about our opportunities in 2020 as we are celebratory of the year we had in 2019.

32.    Also on January 22, 2020, Business First declared a quarterly dividend for the fourth quarter of 2019 in the amount of $0.10 per share, for the fifteenth consecutive quarter since the second quarter of 2016.

**The Proposed Transaction**

33.    On January 22, 2020, Business First and Pedestal issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> Baton Rouge, LA – Business First Bancshares, Inc. ("Business First") (NASDAQ: BFST), the holding company for b1BANK, and Pedestal Bancshares, Inc. ("Pedestal") today jointly announced the signing of a definitive agreement under which Business First will acquire Pedestal and its wholly owned bank subsidiary, Pedestal Bank. On a pro forma basis as of December 31, 2019, the combined institution would have been the 3rd largest Louisiana-headquartered bank, with total assets of approximately $3.5 billion.

> "This is a transformative, franchise-building opportunity for our company," said Jude Melville, President and CEO of Business First. "Pedestal Bank has for many years been a well-managed, high performing competitor of ours, and teaming up with them grows our market share, broadens our shareholder base, and strengthens our already deep talent pool. It's the next step in our quest to be our region's bank of choice."

> As of December 31, 2019, Business First had total assets of $2.3 billion, total loans of $1.7 billion, total deposits of $1.8 billion and total shareholders' equity of $285.1 million, compared to Pedestal's estimated $1.2 billion in total assets, $0.9 billion in total loans, $1.0 billion in total deposits and $147.8 million in shareholders' equity. Pedestal Bank, which was founded in 1999, is headquartered in Houma, Louisiana and operates 22 branches across southern Louisiana. For the fiscal year 2019, Pedestal Bank reported pre-tax earnings of approximately $20.5 million.

Following the completion of the transaction, Business First will fix the size of its board of directors at fourteen members, which will be comprised of ten current Business First directors and four current Pedestal directors. In addition, Pedestal Bank's President and CEO, Mark Folse, will relocate to Baton Rouge to join b1BANK's executive team. "Over the last 20 years, Pedestal Bank has built its success and reputation on always striving to exceed our customer's expectations," said Folse. "We believe this partnership is a positive move that is consistent with our pursuit of enhancing not only the customer experience, but also the communities we serve. Over the years we have built relationships with the leadership team at Business First, and I am confident that our like-minded approach to customer service, employee relations, and the creation of shareholder value will present positive opportunities for all involved."

Under the terms of the merger agreement, which has been unanimously approved by the board of each company, Pedestal's shareholders will receive cash consideration of approximately $21.8 million, which will be in the form of a pre-closing, tax-free distribution to Pedestal's shareholders, and approximately 7.6 million shares of Business First's common stock. Following the completion of the transaction, former Pedestal shareholders will own approximately 36 percent of the combined company. Based on Business First's 20-day volume weighted average price of $24.88 as of January 21, 2020, the transaction is valued at approximately $211.2 million in the aggregate. The merger agreement contains customary representations and warranties and covenants by Pedestal and Business First, and is subject to customary closing conditions, including approval by Pedestal's and Business First's respective shareholders and the receipt of customary regulatory approvals. The transaction is expected to close as early as the second quarter of 2020.

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

34.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Business First's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

35.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the pro forma forecasts and estimates relied upon by Business First's financial advisor, Raymond James, in its valuation analyses; (ii) the data and inputs underlying the financial

valuation analyses that support the fairness opinion provided by Raymond James; and (iii) Raymond James' potential conflicts of interest.

***Material Omissions Concerning the Pro Forma Forecasts and Estimates***

36.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the pro forma forecasts and estimates.

37.     For example, the Proxy Statement sets forth:

In connection with its review of the proposed merger and the preparation of its opinion, Raymond James, among other things:

* * *

- reviewed certain information related to the historical condition and prospects of Pedestal and Business First, as made available to Raymond James by or on behalf of Business First, including, but not limited to, (a) financial projections with respect to the future financial performance of Pedestal prepared by the senior management of Pedestal and approved for Raymond James' use by the senior management of Business First (the "Pedestal financial forecasts"), (b) publicly available consensus median Wall Street research estimates related to Business First for 2020 and 2021 and long-term growth rate assumptions for Business First for 2022 through 2025, as provided by the senior management of Business First (the "Business First financial forecasts"), and (c) certain forecasts and estimates of potential cost savings, operating efficiencies, revenue effects, and other pro forma financial adjustments expected to result from the merger, as prepared by management of Business First and approved for Raymond James' use by the management of Business First (the "Pro Forma Financial Adjustments")

Proxy Statement at 53.  The Proxy Statement, however, fails to disclose the certain forecasts and estimates of potential cost savings, operating efficiencies, revenue effects, and other pro forma financial adjustments expected to result from the merger, as prepared by management of Business First and approved for Raymond James' use by the management of Business First (the "Pro Forma Financial Adjustments").

38.     The omission of this information renders the statements in the "Unaudited Financial Forecasts" and "Opinion of Business First's Financial Advisor" sections of the Proxy Statement

false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Raymond James' Financial Analyses***

39.     The Proxy Statement describes Raymond James' fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Raymond James' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Business First's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Raymond James' fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Business First's stockholders.

40.     With respect to Raymond James' *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Raymond James in the analysis.

41.     With respect to Raymond James' *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Raymond James in the analysis.

42.     With respect to Raymond James' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) Pedestal's projection metric Raymond James discounted back to present value which formed the basis of its analysis and quantification thereof;[1] (ii) the terminal

---

[1] The Proxy Statement discloses certain projections for "Pedestal **on a stand-alone basis** for fiscal 2019 and **without giving effect to the merger**, which was provided to Raymond James prior to the end of Pedestal's fiscal 2019 (the '2019 forecasted Pedestal results')."  Proxy Statement at 59 (emphasis added).  The Proxy Statement further discloses that Company senior management directed Raymond James to "utilize the 2019 forecasted Pedestal results and to apply a 5% annual growth rate to such results to determine the prospective financial information for 2020 through

values for Pedestal; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 12.5% to 14.5% that Raymond James applied in the analysis.

43.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion

44.     The omission of this information renders the statements in the "Opinion of Business First's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Raymond James's Potential Conflicts of Interest***

45.     The Proxy Statement omits material information concerning the potential conflicts of interest faced by Raymond James.

46.      The Proxy Statement sets forth:

> During the two years preceding the date of Raymond James' written opinion, Raymond James has provided the following services to the parties to the merger: (1) Raymond James served as an underwriter for a public offering of common stock by Business First, for which Raymond James received compensation; and (2) Raymond James engaged in fixed income trading activity with Business First, for which it has earned income. Raymond James anticipates serving as an agent for a share purchase program of Business First, for which it may be paid commissions in the future.

---

2025" (*id.*), a summary of which is set forth on page 59 of the Proxy Statement.  However, Raymond James' *Discounted Cash Flow Analysis* was "based solely on the Pedestal financial forecasts, **including certain pro forma effects of the merger**" (*id.* at 56) (emphasis added), which are not disclosed in the Proxy Statement.

*Id.* at 57.  Yet, the Proxy Statement fails to disclose the compensation Raymond James received in connection with such services.

47.    The Proxy Statement further sets forth:

> For services rendered in connection with the delivery of its opinion, Business First paid Raymond James a fee of $250,000 upon delivery of its opinion. Business First will also pay Raymond James a fee for advisory services in connection with the merger equal to $1.25 million (less the fee paid upon delivery of the opinion, the amount of which shall be deducted), **a substantial portion of which is contingent upon the closing of the merger.**

*Id.* (emphasis added).  The Proxy Statement, however, fails to specify the amount of Raymond James' fee that is contingent upon closing of the Proposed Transaction.

48.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

49.    The omission of this information renders the statements in the "Opinion of Business First's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

50.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Business First will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

51.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

52.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the pro forma forecasts and estimates, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Raymond James, and Raymond James' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

55.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

56.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of**
**Section 20(a) of the Exchange Act**

57.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

58.     The Individual Defendants acted as controlling persons of Business First within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Business First and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

61.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that

they reviewed and considered—descriptions which had input from the directors.

62.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Business First's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Business First, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Business First stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury.

Dated: March 25, 2020                    **WEISSLAW LLP**

By  _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

15